FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 02, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LAURIE D.,[1] <br><br>                 Plaintiff, <br><br>     vs. <br><br> ANDREW M. SAUL, <br> COMMISSIONER OF SOCIAL <br> SECURITY,[2] <br>               Defendant. | No. 1:18-cv-03187-MKD <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> ECF Nos. 15, 16 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them only by their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

7.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 15, and denies Defendant's motion, ECF No. 16.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

ORDER - 3

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

In July 2014, Plaintiff applied both for Title II disability insurance benefits and Title XVI supplemental security income benefits alleging a disability onset date of November 30, 2014. Tr. 209-14. The applications were denied initially, Tr. 108-31, and on reconsideration, Tr. 132-40, 153-62. Plaintiff appeared before an administrative law judge (ALJ) on July 19, 2016. Tr. 18-49. On August 31, 2016, the ALJ denied Plaintiff's claim. Tr. 674-97.

At step one of the sequential evaluation process, the ALJ found Plaintiff met the insured status requirements through December 31, 2013, and had not engaged in substantial gainful activity since November 30, 2010. Tr. 679. At step two, the

ALJ found that Plaintiff has the following severe impairments: mild cervical spine degenerative disc disease, obesity, agoraphobia, generalized anxiety disorder, marijuana abuse and dependence, and iatrogenic opioid dependence. Tr. 679.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 680. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [S]he must never climb ladders, ropes, or scaffolds; she is able to occasionally crawl, reach overhead height, and have exposure to extreme cold, vibration, and hazardous conditions (such as proximity to unprotected heights and moving machinery); she is limited to tasks that can be learned in 30 days or less, involving no more than simple work related decisions and few workplace changes; she is limited to occasional and superficial public interaction; and she is able to interact with coworkers on a casual or superficial basis but would not do well as a member of a highly interactive or interdependent work group.

Tr. 682.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 690. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as, small products assembler, cleaner housekeeper, and cafeteria attendant. Tr. 691. Therefore, the ALJ concluded Plaintiff was not under

a disability, as defined in the Social Security Act, from the alleged onset date of November 30, 2010, though the date of the decision. Tr. 692.

On July 31, 2018, the Appeals Council denied review of the ALJ's decision, Tr. 1-8, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ conducted a proper step-two analysis;

2. Whether the ALJ conducted a proper step-three analysis;

3. Whether the ALJ properly evaluated the medical opinion evidence; and

4. Whether the ALJ properly evaluated Plaintiff's symptom claims.

ECF No. 15 at 1.

## DISCUSSION

**A. Step Two: Severe Impairment**

Plaintiff contends the ALJ erred at step two by failing to identify her bilateral shoulder condition as a severe impairment. ECF No. 15 at 3-6.

At step two of the disability-evaluation process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). The claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. §§ 416.921, 404.1521. The claimant's own statement of symptoms alone will not suffice. *Id.*

The ALJ then considers whether the medically determinable impairment is severe or not severe. This is a de minimis standard. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). A medically determinable impairment is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work," SSR 85-28 at *3, including basic work activities, such as lifting, pushing, pulling, reaching, carrying, handling, understanding, carrying out and remembering simple instructions, dealing with changes in a routine work setting, and responding appropriately to supervision, coworkers, and usual work situations, 20 C.F.R. §§ 416.921, 404.1521; SSR 85-28.

Here, the ALJ found that the objective imaging and treating provider's findings indicated that Plaintiff's right and left shoulders improved with treatment and therefore were not severe impairments as they did not last longer than twelve

ORDER - 9

months. Tr. 679-80 (citing Tr. 346 (May 2014: noting crepitus on the right and left shoulder, along with painful abnormal active range of motion, but the radiographs demonstrated no acute fracture or dislocation or joint abnormalities); Tr. 353, 356 (June 2014: noting right shoulder doing well with pain, strength, and motion, and that left shoulder had no swelling, but that Plaintiff would pursue arthroscopic surgery for left shoulder); Tr. 359 (July 2014: two-week follow-up after surgery on left shoulder showing acceptable range of motion, along with crepitus, tenderness, and full strength); Tr. 400 (July 2014: during visit related to pregnancy cramping, Plaintiff's upper extremity range of motion was noted as normal); Tr. 408 (Aug. 2014: noting that shoulder range of motion was still moderately painful but intact with good strength and sensation throughout the arm); Tr. 432-33 (Oct. 2014: noting crepitus and tenderness in left shoulder with active painful range of motion but with full upper extremity strength bilaterally, commenting that Plaintiff "has recovered nicely" and that she is likely suffering from acute inflammation over the acromioclavicular joint and biceps tendon that is believed to respond well to topical pain relief, and active pain free range of motion in right shoulder); Tr. 493-94 (Dec. 2014: noting that Plaintiff did not pick up either the prescription or the over-the-counter topical pain relief and that Plaintiff had good shoulder strength and range of motion); Tr. 496-97 (Jan. 2015: noting that, although there is pain during the left shoulder's range of motion, Plaintiff had normal upper extremity

strength); Tr. 562 (May 2015: noting good strength and sensation in Plaintiff's arms and good range of motion in the shoulders, opining that bilateral shoulder pain may be related to a pinched nerve in Plaintiff's neck)).

Notwithstanding these medical observations, which the ALJ found consistent with no more than a minimal effect on Plaintiff's ability to work, the ALJ gave significant weight to Dr. Diane Rubin's opinion that Plaintiff is limited to occasional bilateral overhead reaching. Tr. 689. Dr. Rubin attributed the need for this occasional overhead-reaching limitation to Plaintiff's shoulder conditions. Tr. 96. However, the ALJ attributed Dr. Rubin's opined limitation to Plaintiff's cervical spine impairment, rather than Plaintiff's shoulder condition. Tr. 689. The ALJ failed to offer any explanation for this attribution. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.).

Because this matter is being remanded on other grounds as is discussed *infra*, the ALJ on remand is to explain why the record supports attributing Dr. Rubin's opined overhead-reaching limitation to Plaintiff's cervical spine impairment, rather than Plaintiff's shoulder condition—and in turn offer more explanation as to why Plaintiff's shoulder condition is not a severe impairment given Dr. Rubin's opinion.

Plaintiff also argued that the ALJ erred by weighing Plaintiff's symptom complaints about her shoulder pain and resulting limitations at step two. ECF No. 15 at 3-4. An ALJ must first determine whether the claimant's impairment is severe based solely on the objective medical evidence, and if the ALJ determines the impairment is not severe based solely on the objective medical evidence, the ALJ then considers the claimant's reported symptoms to determine if these additional considerations result in more than a minimal effect on the claimant's ability to do basic work activity. SSR 16-3p; *Curvin v.* Colvin, 778 F.3d 645, 649 (7th Cir. 2015). On remand, if there is an absence of objective evidence indicating a severe shoulder impairment, the ALJ may consider Plaintiff's subjective complaints to determine if the de minimis standard of step two is satisfied. *See Webb v. Barnhart*, 433 F.3d 683, 687-88 (9th Cir. 005).

**B. Step Three: Listing 1.04A**

Plaintiff argues the ALJ failed to consider that Listing 1.04A was met because Plaintiff has severe cervical degenerative disc disease and left paracentral disc protrusion at C5-6 encroaching on the left C6 nerve root. ECF No. 15 at 6 (citing Tr. 679, 504). In order to meet Listing 1.04A, a claimant must establish: 1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain; 2) limitation of motion of the spine; 3) motor loss ("atrophy with associated muscle weakness or muscle weakness") accompanied by sensory or

reflex loss; and 4) if there is involvement of the lower back, positive straight-leg

raising test (sitting and supine).  20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.04A;

*Stewart v. Colvin*, 674 F. App'x 634, 635 (9th Cir. 2017) (finding Listing 1.04A

was not met); *Gnibus v. Berryhill*, No. 2:15–cv–1669-AC, 2017 WL 977594, at *4

(E.D. Cal. March 13, 2017) (finding Listing 1.04A was met) (citing *Sullivan v.

Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment

matches a listing, it must meet *all* of the specified medical criteria.  An impairment

that manifests only some of those criteria, no matter how severely, does not

qualify.")).  Further, the claimant must establish the impairment satisfies the

twelve-month durational requirement.  *Gnibus*, 2017 WL 977594, at *7.

At step-three, the ALJ found that Plaintiff "does not have lumbar stenosis,

spinal arachnoiditis, or nerve root compression."  Tr. 681.  However, later in his

decision, the ALJ correctly noted that "[a] MRI showed a disc protrusion at C5-6

that encroached on [Plaintiff's] left nerve root" and Plaintiff had radiculopathy.

Tr. 686-87 (citing Tr. 504, 516).  Thus, the ALJ's conclusion that Plaintiff did not

have nerve root compression was erroneous.  Because the ALJ found that Plaintiff

did not have nerve root compression, the ALJ did not analyze at step three whether

Plaintiff satisfied the other Listing 1.04A factors, including:  limitations of motion

of the spine and motor loss accompanied by sensory or reflex loss.  Tr. 681.

The Commissioner argues the ALJ's error is harmless as the ALJ found that Plaintiff's pain was adequately treated by medication and that Plaintiff generally had normal range of neck motion, good arm strength, and normal arm sensation. ECF No. 16 at 6-7. While these largely normal findings were grounds relied on by the ALJ to discount Plaintiff's shoulder complaints, Tr. 562, 687, the ALJ found that Plaintiff's cervical spine impairment necessitated an occasional overhead-reaching limitation in the RFC. Tr. 689 (attributing Dr. Rubin's occasional overhead-reaching limitation to Plaintiff's cervical spine impairment, rather than Plaintiff's shoulder). Therefore, it is unclear to this Court whether the ALJ would find that Plaintiff's cervical spine impairment, which appears to have included nerve root compression—was characterized by neuro-anatomic distribution of pain under Listing 1.04A. It is the ALJ's role to make findings of fact; and this Court's responsibility to review the ALJ's findings of fact using the substantial-evidence standard. *See Hill*, 698 F.3d at 1158; *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). In light of the ALJ's erroneous statement that Plaintiff did not have nerve root compression and attendant failure to analyze the other Listing 1.04A factors, the Court is unable to determine whether the ALJ's finding that Plaintiff did not satisfy Listing 1.04A is supported by substantial evidence. *See Gonzales v. Sullivan,* 914 F.2d 1197, 1200-01 (9th Cir. 1990). The ALJ's error at step three is consequential and must be revisited on remand.

ORDER - 14

## C. Medical Opinion Evidence

Plaintiff contends the ALJ improperly weighed the opinions of Phillip Barnard, Ph.D. and Diane Rubin, M.D.  ECF No. 15 at 8-16.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion.  *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

(9th Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216.  The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 1.  Dr. Barnard

In May 2014, Dr. Barnard conducted a psychological examination and diagnosed Plaintiff with agoraphobia and generalized anxiety disorder.  Tr. 393-97.  Dr. Barnard rated Plaintiff as limited in all of her basic work activities, as follows: 1) moderately limited in her abilities to understand, remember, and persist in tasks by following very short and simple instructions; learn new tasks; make simple-work-related decisions; be aware of normal hazards and take appropriate precautions; ask simple questions or request assistance; and set realistic goals and plan independently; 2) markedly limited in her abilities to understand, remember, and persist in tasks by following detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; and perform routine tasks without special supervision; and 3) severely limited in her abilities to adapt to changes in a routine

work setting; communicate and perform effectively in a work setting; complete a normal workday and work week without interruptions from psychologically based symptoms; and maintain appropriate behavior in a work setting. Tr. 395.

The ALJ assigned little weight to Dr. Barnard's opinion. Tr. 688. Because Dr. Barnard's opinion was contradicted by the nonexamining opinions of Matthew Comrie, Psy.D., and Jane Lewis, Ph.D., Tr. 62-69, 91-98, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Barnard's opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ discounted Dr. Barnard's opinion because it was unexplained. Tr. 688-89. A medical opinion may be rejected by the ALJ if it is inadequately supported and unexplained. *Bray*, 554 F.3d at 1228. For instance, individual medical opinions are preferred over check-box reports. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). However, if observations and notes are consistent with the opinion, a conclusory opinion, such as a check-box form, may not automatically be rejected. *Trevizo v. Berryhill*, 871 F.3d 664, 667 n.4 (9th Cir. 2017); *Garrison v. Colvin*, 759 F.3d 995, 1014, n.17 (9th Cir. 2014). Here, the ALJ found that Dr. Barnard's check-box form did not explain his findings, particularly his finding that Plaintiff had significant difficulty maintaining attendance, schedules, and completing a workday/workweek, as Plaintiff "clearly was able to attend and complete [the]

evaluation process" with Dr. Barnard. Tr. 688. The ALJ accurately found that Dr. Barnard did not explain his extreme limitations. While Dr. Barnard summarized the clinical interview and the mental status examination, noting that Plaintiff's speech was slow and hesitant, that she was anxious and tense with no eye-contact and an anxious-tense affect, and that her fund of knowledge, insight, and judgment were not within normal limits, Dr. Barnard also noted that Plaintiff's thought process, content, orientation, perception, memory, concentration, and abstract thought were within normal limits. Tr. 396-97. The ALJ reasonably found that Dr. Barnard's report did not adequately explain his severe check-box ratings, including his opinion that Plaintiff would have significant difficulty maintaining attendance, schedules, and completing a workday/workweek.

Second, the ALJ discounted Dr. Barnard's opinion because it was not based on a record review or objective findings but instead relied too heavily on Plaintiff's self-reports. Tr. 689. A physician's opinion may be rejected if it is based on a claimant's properly discounted subjective complaints. *Tonapetyan v. Halter*, 242 F.3d 1141, 1149 (9th Cir. 2001); *Fair*, 885 F.2d at 604. However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). A clinical interview and mental status evaluation are objective measures and cannot be

discounted as a "self-report." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Here, the ALJ found that Dr. Barnard "relied heavily on [Plaintiff's] self-reports," "[n]othing in the record indicated that she had difficulty completing the evaluation," and "[h]is ratings for simple instructions, learning, communication, effective performance, and appropriate work behavior were not supported (to the extent that one could obtain the meaning of these categories)." Tr. 689. The ALJ's finding that Dr. Barnard relied heavily on Plaintiff's self-reports is reasonable given that Dr. Barnard reviewed no medical records and did not conduct any psychological testing, other than the clinical interview and mental status examination, which were simply based on Plaintiff's self-reports and, as discussed *supra*, failed to include sufficient abnormal observations and findings to support Dr. Barnard's severe functional limitations. The ALJ's finding that Dr. Barnard's extreme opinion relied too heavily on Plaintiff's self-reports, rather than objective findings and the record review, is reasonable and supported by substantial evidence. However, since this matter is being remanded for a reassessment at step three, the Court directs the ALJ to reassess Plaintiff's symptom reports based on the reevaluation of the medical evidence. Accordingly, the Court has not reached a conclusion at this stage whether the ALJ properly

rejected the Plaintiff's symptom complaints.  Thus, Dr. Barnard's opinion should be reevaluated on remand.

Third, the ALJ discounted Dr. Barnard's opinion because it was inconsistent with the medical record.  Tr. 689.  An ALJ may discount a physician's opinion that is unsupported by the record as a whole.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Moreover, the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion.  20 C.F.R. § 416.927(c)(6).  Here, the ALJ found that Dr. Barnard's mental-health opinion was inconsistent with records that Dr. Barnard did not review—records which were reviewed by the nonexamining opinions of Dr. Comrie and Dr. Lewis, who opined that Plaintiff was much less limited than Dr. Barnard opined.  Tr. 689.  In making this finding, the ALJ relied on three treatment notes related to 1) a follow-up visit for Plaintiff's shoulder pain; 2) an emergency room visit for cramps during Plaintiff's pregnancy; and 3) Plaintiff's first prenatal office visit.  Tr. 689 (citing Tr. 353-57 (noting that Plaintiff's psychiatric condition was "normal," with "[a]ppropriate mood and affect," and that she was orientated "to time, place, person, [and] situation"); Tr. 399-401 ("Psychiatric exam included findings of patient orientated to person place and time.  Normal affect."); Tr. 643-46 (Plaintiff and her boyfriend reported that Plaintiff's anxiety, PTSD, panic attacks, and

depression were under control without medications.).  The ALJ also highlighted

that Dr. Barnard was unaware that Plaintiff had previously reported severe

depression since childhood, not simply anxiety as she had reported to him.  Tr. 689

(relying on Tr. 393-97, 412, 379).  The ALJ's finding that Dr. Barnard's opinion

was inconsistent with the other medical evidence—objective and opinion—is a

reasonable interpretation of the record and supported by substantial evidence.

However, the ALJ went on to conclude that Dr. Barnard's opinion was

ambiguous, did not offer functional limitations, and did not account for the

interrelatedness of the work-ability factors.  Tr. 688-89.  The ALJ discounted Dr.

Barnard's opinion that Plaintiff was severely limited in her abilities to "perform

effectively" and engage in "appropriate behavior" on the grounds that these terms

were ambiguous.  Tr 688, 395.  Regardless of whether these terms were

ambiguous, the ALJ gave great weight to the less-explained non-examining

opinions of Dr. Comrie and Dr. Lewis—opinions that contained similar phrases,

such as the "ability to respond appropriately to changes in the work setting" and

the "ability to maintain socially appropriate behavior."  Tr. 68, 97-98, 395.  The

ALJ did not find these phrases ambiguous and instead assigned great weight to

these nonexamining opinions.  It was error for the ALJ to discount Dr. Barnard's

examining opinion on the grounds that his phrases were ambiguous while

assigning weight to the nonexamining opinions using similar phrases.  *See*

*Garrison*, 759 F.3d at 1012-13 ("An ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

The ALJ also found that, "in using a mild, moderate, and marked rating system, [Dr. Barnard] did not provide clear indication as to whether [Plaintiff] could perform the function rated. Such moderate and marked rating distinctions are not appropriate for formulating a specific residual functional capacity in the Social Security context." Tr. 688. The form used by Dr. Barnard, however, defined "moderate" as meaning "there are significant limits on the ability to perform one or more basic work activity"; "marked" as meaning "a very significant limitation on the ability to perform one or more basic work activity"; and "severe" as meaning "the inability to perform the particular activity in regular competitive employment or outside of a sheltered workshop." Tr. 395. Contrary to the ALJ's finding otherwise, Dr. Barnard offered an opinion as to Plaintiff's work-functional limitations. *See* 20 C.F.R. §§ 416.917(a)(1), 404.1527(a)(1) (Medical opinions are statements from acceptable medical sources that reflect "judgments about the nature and severity of [the claimant's] impairments, including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."). It

was the ALJ's role to weigh Dr. Barnard's opined work-limitation findings against the relevant factors identified in 20 C.F.R. §§ 416.927(c) and 404.1527(c) and include the accepted functional limitations into the RFC.

Finally, the ALJ discounted Dr. Barnard's opinion because it "did not account for interrelatedness between the [work-ability] factors." Tr. 688. An ALJ is not obliged to credit medical opinions that are unsupported by the medical source's own findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, the ALJ found that "[i]f a person is limited to simple instructions with reduced social interaction," Dr. Barnard's "form does not address whether completion of a normal workday, appropriate behavior, and other factors would be less severe with such limitations." Tr. 688-69. The ALJ apparently assumed (as no supporting evidence was cited by the ALJ) that Dr. Barnard's severe and marked limitations were based on Plaintiff performing a job that required more than simple instructions with non-reduced social interaction. But the ALJ did not discount Dr. Lewis' or Dr. Comrie's opinions for the same assumed failure even though there is no indication that Dr. Lewis and Dr. Comrie accounted for the interrelatedness of the work-ability factors when discussing Plaintiff's social-interaction limitations, as compared to her cognitive abilities. Tr. 56-71, 79-99, 395; *see Garrison*, 759 F.3d at 1012-13. On this record, it was unreasonable for the ALJ to discount Dr. Barnard's opinion because it did not account for the

interrelatedness of the work-ability factors, while assigning great weight to Dr.

Lewis' opinion and Dr. Comrie's opinion.

On remand, the ALJ is to reevaluate Dr. Barnard's opinion and determine

what weight, if any, to give to Dr. Barnard's opinion.

### 2. Dr. Rubin

In January 2015, Dr. Rubin reviewed the medical evidence then of record

and diagnosed Plaintiff with dysfunction of major joints. Tr. 72-102. Dr. Rubin

opined that Plaintiff was limited to light duty work with postural, environmental,

and manipulative limitations, including limiting Plaintiff to occasional overhead

reaching bilaterally due to degenerative joint disease of the shoulders. Tr. 95-97.

The ALJ assigned significant weight to Dr. Rubin's opinion but attributed

Dr. Rubin's overhead reaching limitation to Plaintiff's cervical spine impairment,

rather than the left shoulder. Tr. 689. An ALJ need not provide reasons for

rejecting a physician's opinion if the ALJ incorporates the opinion's functional

limitations into the RFC. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th

Cir. 2010). Here, while the ALJ's attribution of the overhead-reaching limitation

to Plaintiff's cervical spine impairment, rather than to her left shoulder, may be

reasonable, the ALJ did not offer any analysis to such attribution. *See Embrey*, 849

F.2d at 421-22 (The ALJ must do more than offer his conclusions. He must set

forth his own interpretations and explain why they, rather than the doctors', are

correct.).  Although this error may be harmless as the overhead-reaching limitation was included in the RFC, because this matter is being remanded on other grounds, the ALJ must explain this finding on remand if the ALJ continues to attribute Dr. Rubin's bilateral overhead-reaching limitation to Plaintiff's cervical spine impairment, rather than Plaintiff's shoulder as Dr. Rubin opined.

### D. Plaintiff's Symptom Reports

Plaintiff contends the ALJ failed to rely on clear and convincing reasons in discounting her statements about the intensity, persistence, and other limiting effects of her symptoms.  ECF No. 15 at 16-20.  Because the analysis of this issue depends on the ALJ's evaluation of the medical evidence, the Court declines to address this issue.  On remand though, if the ALJ discounts Plaintiff's reported physical or psychiatric symptoms on the grounds that Plaintiff engaged in activities, the ALJ must identify how the level of these activities is consistent with the ability to engage in sustained work activities.  *See Trevizo*, 871 F.3d at 675-76; *Garrison*, 759 F.3d at 1016; *Fair*, 885 F.2d at 603 (recognizing that a claimant's ability to engage in activities that were sporadic or punctuated with rest, such as housework, occasional weekend trips, and some exercise, do not necessarily support a finding that she can engage in regular work activities).  Second, if the ALJ discounts Plaintiff's physical or psychiatric symptoms due to lack of treatment or as inconsistent with the medical record, the ALJ must consider whether

Plaintiff's conditions were expected to benefit from treatment and/or whether any reasons offered constitute good cause for failure to follow or seek treatment. *See Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017) (requiring the ALJ to consider the reason for a particular medical visit and whether the noted observations pertained to the condition being treated); *Holohan*, 246 F.3d at 1205 (requiring the medical statements to be read in the context of the overall diagnostic picture). In addition, before the ALJ discounts Plaintiff's complaints on the grounds that she did not mention them during the administrative hearing, the ALJ must ensure that Plaintiff has an opportunity to discuss all of her conditions during the hearing.

**E. Remand**

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 15 at 20.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1981). When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"). However,

remand for an award of benefits may be appropriate when 1) the record has been fully developed and further administrative proceedings would serve no useful purpose; 2) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and 3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, further proceedings are necessary. As discussed *supra*, the ALJ erroneously failed to consider whether Plaintiff satisfied Listing 1.04A. In addition, many of the reasons relied on by the ALJ to discount Dr. Barnard's opinion were not reasonable or supported by the record and the ALJ erred by failing to explain his attribution of Dr. Rubin's opined overhead-reaching limitation to Plaintiff's cervical spine impairment, rather than Plaintiff's left shoulder—an attribution that appeared to impact the ALJ's step-two analysis. Notwithstanding these errors, the record as a whole creates serious doubt that Plaintiff is disabled. Therefore, further proceedings are necessary. On remand, the ALJ is directed to consider reevaluate the medical evidence and conduct a new sequential analysis, including reconsidering Plaintiff's symptom testimony.

# CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is neither supported by substantial evidence nor free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to **substitute Andrew M. Saul as the Defendant and update the docket sheet**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED August 2, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE